IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| ROBERT REPA AND JEAN REPA,<br>HUSBAND AND WIFE,<br><br>Plaintiffs<br><br>vs.<br><br>FRANK NAPIERKOWSKI, HILLTRUX<br>TANK LINES, INC.,<br><br>Defendants | 1:19-cv-00101-RAL<br><br>RICHARD A. LANZILLO<br>UNITED STATES MAGISTRATE JUDGE<br><br>MEMORANDUM OPINION ON<br>DEFENDANTS' MOTION IN LIMINE TO<br>LIMIT THE TESTIMONY OF DONNA<br>MICKLOW [ECF NO. 82] |

MEMORANDUM OPINION

Defendants have moved in limine to exclude from evidence any testimony by Donna
Micklow (Micklow), Plaintiffs' life care planning expert, regarding expenses that Plaintiffs may
incur due to the possible future below-the-knee amputation of Plaintiff Robert Repa's right leg.
ECF Nos. 82, 83.  For the reasons discussed below, the motion will be denied.

Micklow has been identified by Plaintiffs as an expert who will testify concerning past
and future medical expenses of Mr. Repa.  Although Mr. Repa has not had his right leg
amputated during the more than two years that have elapsed since Micklow issued her report, his
medical experts have issued separate reports stating that his injuries from the accident at issue in
this case have placed him at a significant risk of further complications that could lead to
amputation.  ECF Nos. 71-1, 82-3.

1

Micklow's report opines regarding the medical expenses associated with a right leg amputation and the related care Mr. Repa would require for the balance of his life. ECF No. 71-2, p. 12. Micklow bases her conclusions on the medical opinions of Richard P. Bonfiglio, M.D. and Dr. Nick Stefanovski, Mr. Repa's treating orthopedic surgeon. The Defendants argue that Micklow's proposed testimony on amputation-related expenses is inadmissible because the report of neither medical expert "render[s] any opinion, to a reasonable degree of medial certainty, that Repa will need to undergo an amputation of his right leg." ECF No. 82, ¶¶ 5, 7. They argue that without such foundation, it would be impermissible to present evidence of these costs to the jury. ECF No. 83. The Plaintiffs respond that Drs. Bonfiglio and Stefanovski along with Defendants' expert Gary Gruen, M.D. "have all rationally testified that Mr. Repa might lose his leg in the future." ECF No 97, p. 1.

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires an expert witness to have "specialized knowledge" regarding the area of testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, i.e., reliability]; and (3) the expert's testimony must assist the trier of fact [, i.e., fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (alterations in original) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008)).  For the second requirement, Rule 702 requires that "the process or technique the expert used in formulating the opinion is reliable." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994). Therefore, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." *Paoli*, 35 F.3d at 742 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)).  Assessment of whether testimony is based on a reliable foundation is "flexible." *Daubert*, 509 U.S. at 594.  For the third requirement, the proffered expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985). "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92.  Although the applicable standard for determining "fit" is "not that high," it is nonetheless "higher than bare relevance." *Paoli*, 35 F.3d at 745.

The Defendants have not challenged Micklow's qualifications or expertise to opine on the expenses associated with a future amputation and related care.  Instead, they challenge the adequacy of the factual and medical foundation to support her proposed testimony regarding these expenses. *See Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  Essentially, this is a challenge to whether Micklow relied on sufficient facts and data in

reaching her conclusions. *See* Fed. R. Evid. 702. This requires the Court to assess whether the reports of Dr. Bonfiglio and Dr. Stefanovski, his treating surgeon, provide a proper foundation for her proposed expert testimony.

Under Pennsylvanya law, "[i]t is well-settled that a plaintiff in a personal injury action may introduce expert testimony to support a claim that he may suffer certain future harm as a result of a past injury." *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1093-94 (1985), *overruled on other grounds by Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800 (1989) (citing *Boyle v. Pennsylvania Railroad Company*, 170 A.2d 865, 867 (1961); *Walsh v. Brody*, 286 A.2d 666, 668 (Pa. Super. Ct. 1971); *Schwegel v. Goldberg*, 228 A.2d 405, 409 (Pa. Super. Ct. 1967)). "It is likewise true that where the issue in question is one of prognosis, 'a doctor cannot be required to express his opinion with the definiteness required in a causation question.'" *Id.* (citing *Boyle*, 403 Pa. at 618; *Stevenson v. Pennsylvania Sports & Enterprises, Inc.*, 93 A.2d 236, 240 (1952). Even under this slightly relaxed standard, "[d]amages for the prospective consequence of a tortious injury are recoverable only if the prospective consequence may with reasonable probability be expected to flow from the past harm." *In re Paoli R. Yard PCB Litigation*, 916 F.2d 829, 851 (3d Cir. 1990) (citation omitted)). "[T]he movant must prove, by expert testimony, not only that future medical expenses will be incurred, but also the reasonable estimated cost of such services." *Keifer v. Reinhart Foodservices, LLC*, 563 Fed. Appx. 112, 116 (3d Cir. 2014) (citation omitted). Expert medical testimony must show "that the amount of future medical expenses claimed is reasonable, and...such testimony cannot be merely speculative." *Ferranti v. Martin*, 2008 WL 111272, at *3 (M.D. Pa. Jan. 8, 2008) (citing *Cohen v. Albert Einstein Med. Ctr.*, 405 Pa. Super. 392, 592 A.2d 720, 729 (1991)). *See also Mendralla v. Weaver Corp.*, 703 A.2d 480, 485 (Pa. Super. Ct. 1997). To do so, the jurors must be

4

presented with "a reasonable amount of information sufficient to enable them to estimate

damages without engaging in speculation." *Cohen*, 592 A.2d at 729.  In sum, Dr. Bonfiglio's

and Dr. Stefanovski's "expert testimony is not required to predict the exact result anticipated, but

more than a mere possibility or fear of future consequences must be shown." *Fretts v. Pavetti*,

422 A.2d 881, 885 (1980) (citing *Baccare v. Mennella*, 369 A.2d 806 (1976)).  If Mr. Repa's

medical experts' proposed testimony concerning his increased risk of complications that would

require amputation of his leg, as described in their reports, satisfies this standard, Micklow's

testimony regarding the expenses associated with amputation would also be admissible.

The Court finds that the proposed expert testimony of Dr. Bonfiglio and Dr. Stefanovski

provides a sufficient foundation for Micklow to opine at trial on expenses associated with future

amputation.  After noting that a wound on Repa's right leg has not fully healed, Dr. Bonfiglio

wrote in his report,

> Mr. Repa is presently at significant risk of wound infection,
> underlying osteomyelitis, and worsening of the wound breakdown.
> If the wound does not heal promptly, <u>Mr. Repa is at *significant risk*</u>
> <u>of needing a right below knee amputation within the next two</u>
> <u>years.</u>
> …
> All medical opinions expressed in this report are held within a
> reasonable degree of medial probability and certainty.

*See* ECF No. 71-1, pp. 59, 61) (emphasis added).

At trial, counsel for Plaintiffs and Defendants can question Dr. Bonfiglio concerning the

basis for this conclusion and how he currently quantifies the risk of future amputation.  At this

stage of the case, it appears that Micklow's testimony, buttressed by a proper foundation laid by

Dr. Bonfiglio's anticipated expert testimony, can reasonably be expected to provide "competent

evidence from which the jury can reasonably determine the degree to which future consequences

of a present injury are probable and, accordingly, what the amount of any damages award should

be." [1] *Martin*, 494 A.2d 1088, 1093-94 n.5 (citation omitted).  *Compare Gradel v. Inouye*, 421

A.2d 674, 680 (Pa. 1980) (a jury, when awarding damages, could consider an expert's testimony

that the negligence of a doctor resulting in arm amputation had "increased the risk" of cancer

later in life, reasoning that "a doctor properly may be allowed to explain the possible future

effects of an injury, and with less definiteness than is required of opinion testimony on

causation") *with Baccare*, 369 A.2d at 807-08 (affirming that jury was not permitted to consider

future medical expenses because "when asked to give a prognosis for the future, the doctor was

unable to do so, nor was he able to estimate medical expenses or predict whether future

hospitalizations would be required.  He testified that it was his experience in cases of low back

strain that recovery could come any day or never come at all and he could not predict what the

future would bring in the appellant's case.").

     The report of Dr. Stefanovski, standing alone, would be too speculative to provide a basis

for Micklow's testimony about future amputation expense.  Dr. Stefanovski stated,

> Mr. Repa sustained a serious injury, obviously requiring serious
> surgery, from which he developed would complications that
> required detailed attention to dressing changes, wound [vacuum-
> assisted closure (VAC)] applications as well as serial
> debridements.  We are at a juncture where he may require removal
> of the plate and hardware with subsequent skin grafting.  <u>If</u> he has
> a deep-seeded osteomyelitis, he ***may*** require further surgery to
> debride any osteomyelitic bone that is not responding to IV
> antibiotics.  <u>Ultimately, he ***may*** even require a below-knee
> amputation.</u>
>
> …

---

[1] What's more, Plaintiffs' response to the motion stated that Mr. Repa's right leg wound was closed for more than a year but has reopened a few months ago, although it is unclear from Plaintiffs' submissions what effect, if any, this may have on Dr. Bonfiglio's testimony.

> He seems to be doing well ambulating right now, but I do not
> know what the future holds for him.  Although he can walk short
> distances, I do not believe he is capable of walking the amount that
> he used to work prior to his injuries.  <u>Certainly, *if* he ends up with
> complications of osteomyelitis that may result in significant bone
> debridement and/or below-knee amputation</u>, his limitations would
> be greatly affected.
> …
> All of my statements mentioned above are within a reasonable
> degree of medical certainty.

*See* ECF No. 82-3, p. 2 (Dr. Stefanovski's Report) (emphasis added).

Dr. Stefanovski's Report speaks only in terms of complications that may arise and require amputation without offering any quantification of these risks or any other basis upon which a jury could assess their likelihood.  "A jury may not award damages on the basis of speculation or conjecture."  *Martin v. Johns-Manville Corp.*, 494 A.2d at 1093-94 n.5 (citing *Lorch v. Eglin*, 85 A.2d 841, 843–44 (1952); *Rice v. Hill*, 172 A. 289, 291–92 (1934)).  Because the risk of future complications requiring amputation are within the scope of Dr. Stefanovski's report, however, his trial testimony may also provide foundation for Micklow's proposed testimony.  Of course, whether Dr. Bonfiglio and Dr. Stefanovski's actual trial testimony provides the foundation needed for Micklow's opinions may be challenged by at trial.  For present purposes, Plaintiffs' proffers are sufficient.[2]

---

[2] *See also Cudone v. Gehret*, 821 F. Supp. 266, 270-71 (D. Del. 1993) (plaintiff entitled to jury instruction on recovery for "increased risk" when expert testimony showed a reasonable basis by stating that it was "more likely than not" that the likelihood of the recurrence of plaintiff's cancer had more than doubled due to negligent diagnosis that was inadequate and untimely); *Miller v. Gorski Wladyslaw Estate*, 2006 WL 3533113, at *4 (W.D. La. Dec. 6, 2006) (permitting expert testimony on the likelihood of future surgical procedures and amputations when his testimony was supported by an amputation specialist and he based his opinion on recognized risk factors accepted in mainstream medicine, but not permitting testimony on the specific number of surgical procedures when that testimony was based on an unreliable foundation and method).

Defendants argue that Micklow's testimony on this subject should be excluded based on the contrary expert opinion of Gary Gruen, M.D.   Dr. Gruen's disagreement as to the certainty of the need for an amputation, however, does not require exclusion of this testimony.[3]   When "a party argues that an expert's testimony is unreliable because the conclusions of an expert's study are different from those of other experts," this "is no basis for holding the expert's testimony inadmissible." *Paoli*, 35 F.3d at 746 n.15.   Further, although Micklow did not rely on Dr. Gruen's testimony when reaching her conclusions, his opinions do add some foundation concerning Mr. Repa's potential need for a future amputation.   In response to questioning from Plaintiffs' counsel, Dr. Gren agreed at his deposition that it is "possible Mr. Repa might in the future need an amputation at some portion of his leg." ECF No. 96-2, p. 2.   In his report, he also concluded, "[u]ltimately, he may even require a below-knee amputation."  ECF No. 73-1, p. 11. He also noted his concern that Repa's ongoing infection could require the surgical removal of the hardware installed during post-accident surgery.  *Id.*

Dr. Gruen's opinion that Mr. Repa's continued smoking has diminished the healing of his wound and increased the likelihood of future amputation may ultimately go to issues of causation of damages for the jury to consider, but it also does not warrant limiting Micklow's proposed testimony.  *See Neupauer v. United States, Dep't of Veteran Affs.*, 2017 WL 6327580, at *38 (M.D. Pa. Dec. 11, 2017) ("While Mr. Neupauer's smoking may have increased the risk that he would need surgery, it was the failure to properly treat Mr. Neupauer from October 1 through October 15, 2013, by Drs. Adajar and Shaikh which made the amputation of Mr. Neupauer's toes

---

[3] In his report dated January 29, 2020, Dr. Gruen stated, "[Repa] currently has no signs and symptoms of osteomyelitis that would warrant hardware removal or treatment."  ECF No. 96-2, p. 11.

and the debridement of his left foot with resulting tissue loss necessary and indeed

unavoidable.").

      For these reasons, Defendants' Motion in Limine at ECF No. 82 will be denied, without

prejudice to revisiting the issue at trial.  A separate order follows.


      DATED this 3rd day of May, 2022.

                            BY THE COURT:

                            RICHARD A. LANZILLO
                            UNITED STATES MAGISTRATE JUDGE